Good morning, Your Honors, and may it please the Court, Kimberly Trimble on behalf of Mr. Maravilla. Mr. Maravilla would have been granted a U-Visa petition if his immigration attorney had not been ineffective and if he had not invalidly waived his right to appeal. For that reason, his illegal reentry conviction must be vacated. Can you just maybe jump right in by responding to the case that the government raised in the 28-J letter? Yes, Your Honor, the government's essential argument in both its answering brief and its 28-J letter is that these immigration proceedings that occur outside of the actual removal proceedings are not cognizable claims under 1326D. And that may be true in cases like those cited in the 28-J letter where the process occurred entirely separate from the removal proceedings. Both factually and legally for Mr. Maravilla, the U-Visa proceedings were an integral part of his removal proceedings. This immigration attorney was hired specifically to defend him against the imminent removal proceedings, so it wasn't as if she had represented him years in the past trying to get a status in the first place. She was hired because he was a lawful permanent resident. He knew he was going to be deported if he didn't get the help of an attorney, and she was supposed to make efforts to prevent that deportation. If our court has held that the only proceeding that matters is the hearing itself on the deportation, the removal, then I don't understand how his arrangement with the lawyer or when he hired the lawyer affects that fairly clear rule. Well, Your Honor, her representation was in the removal proceedings, but this court doesn't need to blind itself to what she was doing outside of those hearings itself. And, in fact, the immigration judge... Your claims are about what she did outside the proceedings, not what she did in the proceedings. They're united, is my point, Your Honor, is that what she was doing in the proceedings was affected by what she was doing outside of the proceedings. But that's true in all the cases. So in Laura Torres and Balam Shook, they wouldn't have had the removal proceeding if they'd had the earlier relief. So it's always intertwined, right? Well, not in the same factual manner of what was happening here. The immigration attorney was giving her the most credit that you can for her strategic decisions. What she was doing outside of the removal proceedings themselves was an attempt to prevent the removal order from being entered. And she explicitly explains this to the immigration judge as well. That's distinct from immigration attorneys who are hired before removal proceedings are even contemplated and are trying to get some kind of status. So the factual distinction here is that this particular attorney was hired because of the removal proceedings and not in an effort to get a different status. And so the efforts that she was making outside of the actual hearing in front of the immigration judge was nonetheless related to those proceedings. And you can tell that because of what she actually says to the immigration judge at the first hearing and in her declaration as well. All of her efforts to get the U-Visa petition were with the removal proceedings in mind. They were intended as a defense to the removal proceedings. And so when you connect this to what this court considers in demotions and collateral tax to removal orders, this is exactly the type of relief that this court considers when determining whether it's plausible that someone would not have been removed. You can consider all discretionary relief. And this court, in fact, has considered the plausibility of obtaining a U-Visa in that context. And that was in Cisneros-Rodriguez. So certainly it is undisputed that this was an outside proceeding, but it was an intricately connected outside proceeding. Why was the attorney in question here, why was she ineffective? Assuming we can look at that visa proceeding, why was she ineffective? It seems to me that the reason that he was unable to get this U-Visa was the sheriff's determination that he wasn't a victim and the further determination that there was a pending drug charge. Well, Your Honor, the ineffectiveness is actually undisputed by the government in the filing of the first U-Visa petition, and those are connected. So the initial ineffectiveness was the patently deficient U-Visa petition she filed. That petition never identified— I thought we were looking at the second one, which was contemporaneous with the removal proceeding. Well, Your Honor, they both go together, because the first one was filed because of the imminent removal proceedings. And my argument is that the attempt to get the second one was affected by her ineffectiveness in getting the first one. And you can see that even by what the sheriff's office says. One of the reasons the second law enforcement certification was not signed was because the U-Visa had been denied. But then by necessity, that takes us back to review her actions in the first proceeding, which took place before the removal proceeding. Well, the first petition was filed because of the removal proceedings. So I understand what Your Honor is saying, that it happened before the NTA had actually been issued. It contradicts what you had said a couple minutes ago. Well, no, Your Honor, and I'm sorry if I wasn't clear in that. My point is that even the first U-Visa petition was filed because of the removal proceedings. So factually, even the first one is connected. And that first one didn't even identify Mr. Maravilla as a victim. It didn't identify any harm that he suffered. It actually had an expired law enforcement certification. The petition also had inaccurate information about Mr. Maravilla's sentence that he received for his offense. And it never alerted USCIS that he was going to be removed as an aggravated felon. And so when you look at the reason that that first petition was denied, there was the reason that he had his lawful permanent residence status, which the immigration attorney knew he was about to lose. But there was also all of these other errors in the petition that had nothing to do, that had everything to do with the immigration attorney's ineffectiveness. And the secondary problem with that, which is why it is actually connected to the removal proceedings, is had the immigration attorney pursued an administrative appeal, she was welcome to add additional evidence there. And what a competent attorney would have done is then taken the removal order and shown the Vermont Service Center, actually the AAO at that point, that Mr. Maravilla had lost his status as a lawful permanent resident, and also shown the harm that he suffered, which this immigration attorney never even got that evidence. So when you think about the ineffectiveness of this immigration attorney, she did not reasonably present his case. Mr. Maravilla never had all of the relevant facts considered by the immigration authorities who had the authority to grant him this U-Visa petition. Did your argument turn on the fact that it happened to be the same lawyer who handled the U-Visa proceedings as handled the eventual removal proceedings? I do think that that is significant, Your Honor, because she was doing both proceedings as a unified representation. So if he had switched lawyers midstream, you would be out of luck, really? Well, frankly, Your Honor, I think if he had switched lawyers midstream, he may have had an effective attorney, and he may have actually obtained this relief. Not according, well, let's put that aside. Let's just assume there was only one effort at the U-Visa petition, and it was the first one that happened before the removal proceedings were even initiated. Yes. You're saying that if that was a different lawyer from the lawyer who handled the actual removal proceedings, then your argument today does not hold? Well, I think that must be true, Your Honor, because then factually the representation didn't include the removal proceedings. And so if this was a separate application like it was in the cases in the 28-J, if it was completely severed from the removal proceedings, perhaps it wouldn't be cognizable in a 1326-D motion. I don't understand how that could be. Why isn't your argument dependent upon the notion that whatever happens on the U-Visa side is an integral part of the eventual removal proceedings whenever they occur, and so if some portion of the representation is deficient, then I don't understand how you can sever it in that way. Well, Your Honor, perhaps I was giving more facts than you had given me. If the timing was still the same with two different attorneys, then I think it could be cognizable. In my mind, I had thought about a U-Visa petition that had been applied for maybe 10 years before removal proceedings were imminent, before this individual knew that he was going to be subject to removal. I think then it's separate if you had a separate attorney 10 years prior. I'm sorry. I'm not really understanding why it matters if the removal proceedings have begun because the reason people want visas is so they don't get removed eventually, right? I mean, why does it matter if you've actually started the removal proceeding versus you're just trying to get your U-Visas so you never have them, or maybe U-Visa is not a good example. But any kind of visa, your argument, I would think, should apply to any kind of permanent status. Sure, Your Honor. Actually, I think it's much narrower in my case with Mr. Maravia because he already was a lawful permanent resident. I'm not arguing that everyone who ever applies for lawful status can then raise that in a demotion. My point here is when someone is going to lose their lawful status and be deported, all efforts to obtain lawful status as a result of the loss of that status are cognizable in a demotion. And that's actually consistent with the framework of 13206D as well as the Supreme Court's decision in Mendoza-Lopez. We're talking about an administrative proceeding, the result of which contributed to the removal order. And that's exactly the type of order that can be challenged in these collateral attacks. Mr. Maravia did not have an opportunity to contest the effectiveness of his immigration attorney within the administrative proceeding itself. And so 13206D allows that to be raised here, but not without extra findings that he had satisfied the requirements of judicial review and exhaustion. So if you're thinking about these other applications that occur without any connection to a removal proceeding, typically there is an avenue for administrative review and potentially judicial review depending on what type of status you're looking at. In this context where the removal proceedings were happening at the same time, he never did get that administrative review. And that's why in this criminal case he's allowed to raise this collateral attack. I'm just confused maybe on the facts. I thought the first go at the Uvisa petition happened like two years before he even got the NTA. It happened after his criminal conviction but before the NTA. Right. So it's years before the removal proceedings even began. So it's just like your 10-year earlier hypo, isn't it? Well, no, Your Honor, because there was an immigration detainer on him. And so we knew that eventually there was going to be a notice to appear and the removal proceedings. So it is not as if this, I think it would strain credibility to argue that the Uvisa process was done without any consideration of the removal proceedings. It was only done because of the removal proceedings because he already had lawful status. He wouldn't have needed a Uvisa otherwise. But you're saying the removal proceedings go all the way back to the immigration detainer, not the notice. Well, I think factually, yes, that is true. And more importantly, in this particular case, it's because we're challenging the immigration attorney's representation. And that began from actually the moment of the criminal conviction. So to the extent that this immigration attorney's representation prejudiced Mr. Maravia's, the result of Mr. Maravia's removal proceedings, that all of that is relevant from the moment. Was the immigration detainer put on at the time of the, maybe not conviction, was there a sentence when they put it on? When did it get put on? I will check that and I will let Your Honor know. Just one last question then. To take another run at why it would, I'm still confused as to your position on if it was a different lawyer who handled the first Uvisa application and then a new lawyer handled the actual removal proceedings. Your Honor, I think if the timing was the same with just different attorneys, then we still would be able to raise this claim. Okay. If the timing was much earlier, that was my initial answer. But it has nothing to do with the, yeah, okay, I think I got your position. All right, we'll give you a minute for rebuttal. Let's hear from the government. Good morning, and may it please the Court. Ajay Krishnamurthy for the United States. With respect to the argument that the principles laid out in Ballum-Chuck, Lora-Torres, and Contreras do not apply because Mr. Maravia had been convicted of an aggravated felony, that is a distinction, but I don't think it should make a difference in this case. Those decisions did not turn on how imminent removal proceedings were. All of the immigrants in those cases had entered without inspection and so were subject to removal at any point anyway. What they instead focused on was the nature of the Fifth Amendment right to counsel itself, which is the right that applies in immigration proceedings. And what those cases said is that that right serves only to protect the fundamental fairness of the proceedings themselves. And so they acknowledge that there are things that an attorney may do that could put someone in a better or worse position when those removal proceedings start, but those are not the proper subject of an ineffective assistance of counsel. What's your response to your opponent's argument that, at least for 1326D purposes, the removal proceedings should be deemed to have been initiated when the detainer was placed on your case? To the extent that there is any uncertainty about where this line is drawn, it seems like in this context, in the context of collateral attack, it should be focused more narrowly on the context of the proceedings themselves than anything that came before. And when would the proceedings start in your view? When the notice to appear is filed. And do we have a case that says that? I actually think that is laid out in the regulations at 8 CFR 1239.1. That doesn't appear to be disputed in this case. Well, I think she is disputing it, right? She's saying that generally the regulations say that a removal proceeding starts in immigration court has jurisdiction once a notice to appear is filed. It does not before that. Unless there are any other questions on this issue, I'd like to spend just a brief moment on the waiver of appeal issue. Mr. Maravia is also arguing that there is a due process violation because his waiver of appeal before the immigration judge was invalid. But in this case, at SCR 14, he was directly asked whether or not he wanted to appeal, and he said he did not. And then he said that he understood that this meant that he would be removed and his removal order would be final. I think that undercuts any claim that he did not understand what it meant to appeal. And I also think that makes this case significantly different than the cases on which he relies. So it seems like maybe the two of you are talking about different appeals. I've had a little bit of confusion on this. It seems like you're talking about an appeal of the removal order, and she's talking about an appeal of the U visa denial. I actually think they're addressing both appeals. So one of the claims for the ineffective assistance of counsel claim is that his attorney was ineffective because she did not file an administrative appeal of the U visa petition. My argument is that even if she did not, that was an unreasonable decision. The U visa petition was denied in December 2013, I believe. An administrative appeal would have had to have been filed within 30 days. So even within that 30-day window, Mr. Maravia still would have been a legal permanent resident, and so a U visa petition still wouldn't have been on the table at that point. The other waiver issue is they're asserting a freestanding claim that his removal proceeding is invalid because he did not validly waive his right to appeal the removal order. I'm happy to address any questions the Court has about that or the ineffective assistance of counsel claim. Why don't you go back to the threshold question as to whether we can even take into account the deficient performance on the first U visa application. Run through that again. Why do you think that it's so clear that we can't? I think the principles laid out in Balanchuk and Laura Torres in the Third Circuit's decision in Contreras are clear. They have distinguished the Sixth Amendment right to counsel, which applies in criminal cases, from the Fifth Amendment right to counsel, which applies in immigration cases like the one that's at issue in this case. And they have said that that right serves only to protect the fundamental fairness of the proceeding themselves. And one can imagine that if that line were not drawn there, there are any number of decisions that an attorney could help someone make that would put them in a better or worse position. But that doesn't make them subject to an ineffective assistance of counsel claim. For example, one could imagine decisions about residency or decisions about the ways in which your parents apply for status. Those could make someone eligible or ineligible for various forms of relief. But no one is suggesting that that sort of like historical counseling that happens before a removal proceeding starts should be subject to the effectiveness of counsel because no one is guaranteeing an attorney in the first instance in those cases. What those cases have said instead is that you have to be able to present effectively the arguments that you have available to you at the time of your removal proceeding. And so if an attorney does something that takes away some of those arguments, that is an unfortunate result, but that doesn't mean that you have a Fifth Amendment violation. Well, I mean, I guess this does seem like the best case for the best facts, it seems to me, for making this argument. Because as your opponent argues here, the defendant knew full well as soon as he was convicted, basically, that I mean, everyone knew exactly what was going to happen. He hired this lawyer for the sole purpose of trying to prevent the eventual thing that occurred, right? And it was the same lawyer throughout. And so the representation really is all of a piece. It's kind of by happenstance, I think, that I guess it's the DHS that has segregated out the UFISA process from, you know, the rest of the, I mean, I think it used to be that IJS issued these things, right? So it's just, it's kind of artificial, it seems to me. Your argument really rests on a pretty artificial, or not artificial, but, you know, it's just sort of a random thing that USCIS has now been created to handle these. And so it somehow gets separated from what we think of as the normal removal proceedings before the IJS. Your Honor, our argument doesn't rest on the fact that there are different agencies involved or different components involved. I don't think any of those cases turn on the fact of the eminence of removal proceedings. And, in fact, I think in Contreras, the same, the Third Circuit case, the same attorney did represent the immigrant, both in the application of the visa and in the removal proceedings. But I think those cases are reasonably clear that what you have to have to have the effective assistance of counsel is to be able to make the arguments that are available to you that are on the table at the time of your removal proceeding. And in that regard, things that happened before that, it's possible that they would put you in a better position or a worse position. All of those cases involve significantly more egregious errors than I think what's alleged here, missing deadlines altogether. But what's, the right that is at stake here is the Fifth Amendment right to due process. And that is narrowly, it is more narrowly drawn than what I think Mr. Marabia would want. Okay, so once you're in removal proceedings, the NTA is issued, and your only hope is to go now to this other agency and get the U visa. You're saying that, I guess, as long as you have the same lawyer representing you, then everything that happens on the U visa side is considered part of the proceedings? No, Your Honor, I actually don't even think that it's about having the same attorney. I think, for example, if there was some deficiency alleged during the removal proceedings, for example, if Mr. Marabia's claim was that his attorney, once removal proceedings had started, did not attempt to try to secure a U visa or had done something deficient at that point, I think that brings us to a closer case like the one in Cisneros. Oh, that wasn't quite an ineffective assistance of counsel claim. But if there's something an attorney does during the pendency of removal proceedings that could have taken the U visa petition off the table, and that is found to be objectively deficient, then I think that is the proper subject of an ineffective assistance of counsel claim. Okay, let me just make sure I understood. So let's say that what happened on the 2012 petition, right? Because you, I think, concede that what that lawyer did in pursuing the 2012 petition, she rendered deficient performance, no? We do not concede that petition. Okay, well, let's just, why don't you concede that for purposes of my question? Because I think the answer is clear. She was completely deficient in pursuing that. Let's say that that had all occurred after removal proceedings had formally been initiated, and everyone knew that that was the only, this defendant's only hope of getting any relief. There was nothing else that he was going to be eligible for. It was the same lawyer. So right where removal proceedings are underway, the lawyer goes to this other agency to try to pursue this U visa, completely botches the job such that any hope that this gentleman had of getting a U visa is dashed, and let's say it is deficient performance. So just tell me straight, what's your position? Is that? Yes, that is the proper subject of an ineffective assistance of counsel claim, but I would like to push back on the idea that what the attorney did was deficient in this case for just a brief minute. Sure. The U visa was never on the table for Mr. Merivia. When the attorney first applied, he was a legal permanent resident, and by the time removal proceedings had started, the law enforcement agency refused to certify him as a victim. So does that go more to prejudice, though? I mean, I think Judge Watford was asking, like, was the performance deficient? That sounds more like a prejudice argument. No. My point is that it wasn't deficient because there's nothing differently that she could have done, or that would have made a difference in this case. So the argument has been that the Fresno County Sheriff's Office wasn't presented with the facts and Mr. Merivia wasn't listed as a victim in the petition. I'm not sure that's accurate. At ER 54, the U visa petition does list him as a victim. What happened was the Fresno County Sheriff's Office crossed his name out as a victim. Because the lawyer completely botched the job of trying to explain to them why he could be deemed a victim. That's the problem. I actually don't think that information is in the record. At ER 84, the attorney explains that she sent a letter to the Fresno County Sheriff's Office explaining the circumstances of the offense. That letter isn't in the record. The other issue is that the Fresno County Sheriff's Office interviewed Mr. Merivia, and they were intimately familiar with the circumstances of this case having investigated it. The only, like, specific deficiency that I can make out is that they were not presented with evidence that he had symptoms consistent with PTSD. I think it's quite speculative, given the information that they already had, to suggest that that would have changed their mind at that point. Is there any importance for us to the fact that the district court made a factual finding that Numero Velo wouldn't have obtained the certification? I mean, factual findings are generally due deference on appeal. However, in this case, it seems like the issue is based solely on the documents and there isn't, like, an issue of live testimony, and so I think that's less significant here. Okay. Okay. Thanks very much for your argument. Let's give defense counsel a minute for rebuttal. So were you able to deactivate the flashing red light? Okay. Thank you for doing that. I appreciate it. Thank you, Your Honor. I appreciate that as well. I have three brief points. First, I will have to get the date for the detainer for you and file it in a 28-J. I just couldn't find it at this moment. Second, and I think responsive to the government's point that this immigration attorney could not have done anything more, this immigration attorney never demonstrated harm that Mr. Moravia suffered. It was not contested below and not contested in the government's answering brief on page 28 that he actually suffers from PTSD as a result of his victimization in this offense. This immigration attorney not only did not present that information to USCIS, but she never presented it to the sheriff's office either. And so the assumption that the immigration attorney could not have done anything to convince the sheriff's office otherwise is contradicted by the record. Had she actually demonstrated that he satisfied all of the statutory requirements for a U-Visa, the sheriff's office may well have said something. But she had to show that his PTSD was from almost being shot compared to seeing his brother be shot? Well, Your Honor, under the regulations for the U-Visas, a bystander victim who suffers harm that's equivalent to a victim is a victim for U-Visa purposes. So a bystander victim is the equivalent of a direct victim. It's distinct from being an indirect victim from his brother. So it was as a result of being present at the scene of the crime, even if he was a bystander to an injury that caused the trauma. So I think it's very clear that had this immigration attorney owned up to her mistakes and actually explained them to the sheriff's office and the Vermont Service Center, a different result could have happened. And you can actually read between the lines from what the immigration attorney is saying to the immigration judge. She says that a different attorney had to file the first U-Visa petition. In fact, it was her legal assistant, and she signed off on it. But I think her attempt to distance herself from that petition is a recognition that it was deficient. And she never owns up to it and puts forth all of the information that Mr. Maravia was entitled to have these immigration authorities consider. And had all of that information be considered, it was uncontested below that he actually does qualify for a victim. The only question was about this law enforcement certification. And I think the facts show that the sheriff's discretion was affected by the ineffectiveness of this immigration attorney. To the extent that this court questions that, I think remanding for an evidentiary hearing would be appropriate there to be able to access some of the information that the judge did not allow us to access at the first evidentiary hearing about the internal considerations that the sheriff's office made. And I think, as a factual matter, the fact that they signed off on the certification the first time is a good indication that they would have done so with the proper information as well. And finally, the government pointed out that the immigration attorney filed a declaration here saying that she laid out the circumstances of the offense. In the exact same declaration, she acknowledges that she had never filed a U-Visa petition where someone suffered harm other than physical harm. And that she was deficient in her attempts to demonstrate that harm. And so you can read between the lines there that the letter itself also did not sufficiently articulate that to the sheriff's office. Okay. Thank you, counsel. The case just argued will be submitted. Thank you.
judges: Fisher, Watford, Friedland